first case 23-4052, United States v. Cooper. Counsel for appellant, if you'd make your appearance and proceed, please. Good morning, Mr. Chief Judge, and may it please the Court, I'm Jacob McMahon, I'm pleased to represent Todd Cooper, who's in federal custody. His life sentence imposed under the Three Strikes Law is the subject of today's proceeding. In light of Johnson's new rule of constitutional law, made retroactive by the United States Supreme Court in Welch, the residual clause of the Three Strikes Law is unconstitutionally vague, and Mr. Cooper should be resentenced because he does not have three strikes. There's agreement that he has two strikes, one for the instant offense of conviction in this case, and another for a 1988 prior. For the third strike, the government points to a California robbery conviction. I believe there's agreement that such a conviction does not qualify as a strike today, but the government and I disagree about how the sentencing court would have treated the California robbery in 2003. Moreover, we disagree about whether the sentencing or a treatment of the California robbery conviction matters. Well, to start with your prefatory comment, Mr. McMahon, in United States v. Greer, we said, quote, the only right recognized by the Supreme Court in Johnson was a defendant's right not to have his sentence increased under the residual clause of the ACCA. We're not dealing with the ACCA here. Why does Johnson even matter? I mean, for purposes of determining whether the Supreme Court has spoken to the Three Strikes Law, what basis do you have for believing that would be the case? Your Honor, when I discuss the rule of Johnson, I'm referring to a right not to be sentenced under recidivist statute's residual clause that combines the categorical approach with an imprecise risk standard. And I acknowledge your Honor's point that the Johnson case was decided with respect to the Armed Career Criminal Act, and this is not an ACCA case. Mr. Cooper was sentenced under the Three Strikes Law. But as I argue in the briefs, the Johnson rule shouldn't be understood to be statute-specific, and the Court's application of the Johnson rule, which again is the combination of the categorical approach with the imprecise risk standard of a residual clause, that is the combination of elements or factors that causes a residual clause to be unconstitutional. But if that had, if your analysis had been true, the Supreme Court would have just said all the statutes with similar residual clauses, unconstitutional. It's obvious this residual clause is going to be unconstitutional, I think, at least it is to me. But the Supreme Court has really followed this rule under the habeas statute about successive and multiple habeas applications to say it has to be applied to a particular statute. They've been quite clear on that. Unless you think they've changed their mind, how do you get around the string of cases where each time they've said this statute, just this statute, and this statute, they've never said, this is a common language, it just applies to everything? Well, of course, the Court could have drawn such a broad rule in Johnson. On the other hand, the Court was deciding the case before it, which was an ACCA case. And it's no small thing to declare a law unconstitutional. And the Court has taken this step by step. So we don't have a case yet where, affecting Mr. Cooper, that he was sentenced under a three-strikes law that has yet been declared unconstitutional by the Supreme Court. That's true. I believe it's on page 12 of the opening brief. I have a chart that in the lower right cell is open because the Supreme Court hasn't yet declared. And your chart was very helpful. I really appreciated the way you laid that out in your brief. I'm glad, but I would argue that the absent – I'm sorry, Judge, Mr. Chief Justice. I did, too, but it seems to me that chart is determinative. I mean, you know, we're not on direct appeal. I mean, this sort of inferential logic of, oh, well, the Supreme Court in Johnson and DeMaia and these other cases has held residual clauses to be unconstitutional, ergo, it is – it would hold it to be unconstitutional here. I mean, on direct appeal, that has some persuasive force to it. But we're not on direct appeal. We're in the context of – not only are we in the context of a habeas action, we're in the context of a second and successive habeas action. And unless I'm missing something, there is a threshold determination that has to be made. Of course, the prima facie determination was already made by our court. But there is a threshold determination that has to be made as to whether you have a new rule of constitutional law that the Supreme Court has deemed to be retroactively applicable to this statute. And there is no basis for that. I mean, the district court that I know of, the district court alighted that issue and just went on and dealt with the merits, get that. But that doesn't mean you don't have to meet that standard, right? I think it depends a little bit on where we're talking about that standard has to be met. I've argued that I think that the Johnson rule is that when a criminal statute combines the categorical approach with the imprecise or fuzzy risk standard of a residual clause, the rule of Johnson, as explained not only in Johnson, but the Supreme Court's subsequent cases of Davis and DeMaia, is that such a residual clause is unconstitutionally vague. And I recognize as well that the Supreme Court could decide to specifically acknowledge the rule's application to the three strikes law especially in a direct appeal posture. But I would caution the court for waiting for such a case because the government agrees with me that this residual clause is unconstitutional. And if it's not enforcing it against defendants, such a case may not arise. And as the cases I've cited in the briefs show, there are courts, persuasive authorities, district courts around the country, who are recognizing the Johnson rule is not specific to the ACCA statute and can be applied in this three strikes context. Two responses to that. One, we have decided that in Greer that Johnson only speaks to the ACCA. So irrespective of what any other court has done, that's what we've done. First point. Second point, is it not in fact the case that at this level, now having had the prima facie test satisfied for purposes of the district court acting, is it not the case that there are still things that you have to establish? You have to establish that you actually have a new rule of constitutional law that applies to this circumstance. And then you have to show that you can get relief accordingly. At least those two things have to happen. Do you agree with that? If Your Honor could repeat the two points for me. Well, the two things are just the two things that the statute would provide for. The two things that were part of the prima facie test, once you get, once we make a prima facie determination, the district court has to actually find that those things exist, right? That's right. And although I draw the court's attention, I haven't brought this up in the briefing since the government has agreed that jurisdiction is proper and we have a new rule of constitutional process. That's where I'm going. Yes. I don't care what the government does in this regard. If that is a threshold statutory requirement, whether the government agrees that it's met or not, that doesn't do anything for purposes of your burden to show that it's met, right? And I believe the opening brief's first section does lay out why the rule of Johnson reaches this case and that we've met our burden. And yes, I understand that you are arguing that we should apply Johnson to a new statute that Johnson did not apply to. But you've also recognized that the Supreme Court has moved this along statute by statute, step by step, and never looked forward and said, let's just cut to the chase. Everything that's similar is going to be unconstitutional. They've never said that. And so for a second or successive writ, the statute is very, very clear. It can only be maintained when there is a new law made retroactive by the Supreme Court. Yes, Your Honor. And as to this court's discussion about what the scope of that rule is from Greer, that it was Johnson-specific, I'd note, as the briefing notes, Greer was decided before the Supreme Court's articulation or further refinement of what the Johnson rule is in Davis and DiMaia. As Davis said, Johnson and DiMaia, quote, teach that the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined ordinary case. And I believe that's exactly what the three strikes residual clause does. And so this rule recognizes retroactive in Welch is applicable in Mr. Johnson, in Mr. Cooper's case. If we didn't have that last clause of the habeas statute, I would agree with you. But the one that says it's got to be, you can file a successive writ on the basis of the law having been changed by the Supreme Court. Well, I would direct the court's attention. This is the case I was beginning to mention before that hasn't come up in the briefing. But just last week, the U.S. Supreme Court GVR'd a case out of the 11th Circuit called Jones. I'd be happy to provide further authority for that. But the Supreme Court case number is 23-7166. If you did file a supplemental authority, that'd be helpful. Yes, Your Honor. Thank you. Go ahead. The 11th Circuit, in essence, had taken the position sort of, thinking back to the chart, the blank cell problem, you might say, meant that there was no jurisdiction for the district court to address that three strikes defendants habeas petition, even though the government had agreed that the three strikes residual clause was unconstitutional and that the defendant should receive relief. The 11th Circuit decided that there was a lack of jurisdiction. And the habeas petitioner sought certiorari review. The Solicitor General recommended that the court GVR the case because it questioned whether the 11th Circuit's understanding of the jurisdictional rule was correct. And on November 12th, so just last week, the court did GVR Jones. So I would acknowledge also, again, just returning to the Chief Judge's point regarding Greer. While that would normally bind this panel as to the meaning of Johnson's scope, subsequent U.S. Supreme Court developments have intervened. And again, I think the rule of Johnson, the new rule of constitutional law, made retroactive through Welch, is that when a criminal statute combines the fuzzy risk standard of the residual clause with the categorical approach inquiry, such a clause is unconstitutional. So do you think there's language in Welch that says every residual clause with these two failures is unconstitutional? I'm sorry, Your Honor, if you would repeat that. Do you think that Welch said every residual clause that has these two defects to it is unconstitutional? I don't think Welch was so clear in articulating the scope of the Johnson rule because I think Welch was concerned more with whether the Johnson rule is substantive and thus retroactive. And Welch said that it is. And as I point out in the briefing, when the court in the habeas context decides that a certain rule is substantive, then that rule is substantive all the way down. Or in other words, when the rule reaches a certain category of cases, then the immaterial distinctions within that category no longer matter. And so the fact that it's the Armed Career Criminal Act versus the INA versus now here the three strikes law, these are immaterial differences once you recognize that the Johnson rule is squarely aimed at that combination of two factors, the fuzzy residual clause standard and the categorical approach. I believe the rule of the Johnson is what those things combine together. Such a statute is unconstitutional. I'm sorry, Your Honor. I'm sorry to interrupt, but you're relying on the subsequent developments then of Davis and DeMaio, right? Post-Grier, yes, Your Honor. Yes, okay. Could I just shift you to the merits for a second? Please. And we'll allow for a little bit more time in rebuttal. But let me shift you to the merits for a second. There was an argument, at least I understood in your supplemental brief, in which you asserted that language is, quote, a movement should be able to meet his burden by showing that the sentencing court relied on the residual clause with respect to any of the prior convictions that the government submitted for enhancement, that all, quote, all offenses are fair game. I'm just puzzled by that language because it seems to me that that entirely flips your burden. I mean, and it turns it on the head because it is not, we don't have to, we're not supposed to be searching for something that would justify the burden, that your burden is to show that it's more likely than not that the district court did rely upon the residual clause. So the fact that there's something out there that, that some other statute out there, what difference does that make? Your Honor, I admit you lost me just at the end about another statute. Well, let me try to be more precise. What I am saying is that with the inference that I drew from that language in your brief was that if there is, if the government puts forward five particular three strikes offenses, then, and if any of them would be declared, would be ones that have a residual clause that could have been in play here, that of course is unconstitutional, then you can prevail on the merits. Well, does, isn't that the exact opposite of the nature of the inquiry, which is, did the district court in fact rely upon the residual clause? More likely than not rely upon the residual clause in making its determination. In other words, it seemed to me that the, the casting saying that all statutes are fair game really just is, deprives you of the burden that's at play here. Your Honor, I recognize my time is up. I have responded. I'm hoping you will. Please, thank you. No, the government, when it provides the notice of which convictions to be relied upon, to quote 851A, which requires the government's notice, the government sets the target zone for the defendant then on collateral review to say these convictions, the sentencing court had to rely on the residual clause to count them. And the sentencing court relied on all of the convictions here. Thus, it relied on the Oregon. How do you know that? The reason the sentencing court counts. The United States v. Washington specifies that the question is not whether or not the sentencing court could have relied on any of the convictions put forth by the government or in the probation office in the pre-sentence report, but whether or not they actually relied on it. So how do we know that in 2003 the court relied on all five of those? And because the first question is one of historic fact, it's did the sentencing court rely on the residual clause. The next step is did the residual clause reliance prejudice the defendant? Here the residual clause was used because the government proffered these five offenses, because defense counsel didn't dispute that any of them were qualifying strikes, and because the sentencing court engaged in no offense. And we know that in 2003 the government said that all of those, that none of those would qualify, for example, the 81 robbery, not only under the residual clause, but also under the enumerated offense clause. Do we know that the government said that? I think that's what you just said, that the government acknowledged not only that these five convictions were fair game, but that they relied on the third of the three possibilities, the elements clause, the enumerated offense clause, and the residual clause. So how do we know that? I believe the sentencing record shows that the sentencing court counted all of the five proffered convictions, partly in addition because of the comments and how sentencing played out, but additionally because in 2006 the sentencing judge, when denying Mr. Cooper's first 2255 motion, referred to five different serious violent felony convictions to choose from without any indication that a choice had been made. And my point is that if all of the convictions were counted, as I think the sentencing record supports, then the sentencing court necessarily counted the Oregon burglaries using the residual clause. That is historical reliance on the residual clause that this Court should hold meets Mr. Cooper's step one burden. There are two responses. One, the record is silent, is it not, as to which one it relied on? I mean, the Court didn't expressly say it was relying on one of the five. You infer from that that it relied on all five, but it did not distinguish, did it? The Court did not distinguish, and I believe the context of the sentencing shows that the Court accepted all five. Well, the order that is on appeal here is one in which the Court, I think it was the same Court, but that's irrelevant. The Court that made the decision from which the order that is on appeal here said it did not, that it did not rely on the residual clause, what do we do with that? Two points, Your Honor. One, I agree it's not material to the analysis, but it was not the sentencing judge whose order is on appeal. And as I said, it's immaterial. Go ahead, please.  This Court's review, however, is de novo because there was no evidentiary hearing held, and I believe the district court erred when it basically assumed the answer to the question this Court reserved in Lozado about whether the defendant is allowed to show historical residual clause reliance with respect to any of the convictions that the government put forward. I think the district court actually put correctly the right question at the first step, and it was saying to the extent that a sentencing judge adjudicated an offense as a serious violent felony or strike, under the residual clause, the sentence suffers from a constitutional defect. Now, that defect may be harmless, but my position here is that the sentencing court necessarily adjudicated the Oregon burglaries under the residual clause because they didn't otherwise qualify. And so that meets Mr. Cooper's step one burden. All right, unless you have something else. Can I ask one more question? I know we're going way over time. Assuming, for purposes of my question, that we reject your position on the Lozado question of whether we skip straight to harmlessness. I just have a question on this sort of counterfactual question of what the court relied on in 2003. A lot of stuff obviously happened between 2003 and Leverton. So my question is, since the appellate record doesn't have the indictment, doesn't have the plea agreement from 81, the plea documents, obviously between 2003 and now we have Mathis in terms of the application of the categorical approach can call for a modified categorical approach where you look at the indictment or the plea agreement to determine which of these two crimes the defendant was convicted of in 1981 in California. One of which would unquestionably satisfy the generic definition of robbery and one that would not. But we don't have any of those documents. So we don't know whether or not in 2003 the sentencing court applied the modified If we reject your position on harmlessness being the first inquiry, it's your burden – I don't mean to point at you – it's the appellant's burden to show that based on the background legal environment in 2003 that the petitioner can show that there was actual reliance on the, I will call it the improper consideration of robbery, the one that involved injury, a threat to property as opposed to a person. Do you understand my question? Yes, I believe I do, Your Honor. I think in response I'd say I think the question assumes the divisibility of the California statute and that the modified categorical approach could then suss out whether the defendant was convicted of the bodily, personal bodily injury or the property threats. How do we know that, and if we don't know, is there a failure approved by the appellant? No, partly because the California statute isn't divisible in the first place. So the modified categorical approach has no place to play. But also important here, Mr. Cooper's sentencing was in January, pardon me, of 2003. Shepard, the U.S. Supreme Court case, I understand to have introduced the modified categorical approach as a 2005 decision. So I'm not really sure that the sentencing court would have even had the modified categorical approach on the brain, so to speak. All right, let's hear from the government. Thank you. Thank you, Your Honor. Mr. Chief Judge, and may it please the Court, Nathan Jack of the United States. Cooper was convicted in California for robbing a man in his own home, tying him up, and threatening to kill him while holding a hunting knife. When he was given a life sentence— We know that from the pre-sentence report, but we don't know that that was the charge in the indictment. And isn't that the $64 question? What was he convicted of? And without the indictment or the plea agreement, we can look at what the probation officer said in the pre-sentence report, but frankly, I don't think we even know that the district court approved of that finding in the probation report. Obviously, the probation office doesn't make findings, the court does. So that's assuming that the categorical approach applied in 2003, whereas if we look at what courts actually did in 2003, they accepted convictions for robbery based solely on the certified copies of the conviction without engaging in any type of categorical analysis. No definition of what a generic definition of robbery would be, no assessment of whether the state crime for robbery was a categorical match to that generic definition. That's in Oberle, that's in Makovich, where the district court simply accepted that it was based solely on the certified copies of the convictions. So you're saying that a court in 2003 would have accepted a certified copy of the judgment and sentence and said, okay, well, you were convicted of this enumerated offense of robbery, and so we don't really care whether or not the robbery involved a threat to property or not. And do you have a, I didn't see a case cited for that. I saw tons of cases cited for the indisputable proposition that courts would typically take it as a prima facie showing that they would take a certified copy of the J&S, but I haven't seen a case, and maybe I overlooked it, saying that the presentation of the certified copy of the J&S is going to be dispositive, even if the argument is that it wouldn't qualify under the enumerated defense clause as a threat to a person. That's Oberle that we discussed in our brief, and I'll just quote from here. The district court found that Oberle had committed four prior violent felonies, two previous Albuquerque bank robberies, and two Ohio aggravated robberies, based solely on the certified copies of conviction. Okay. That's what courts were doing in 2003. Yeah, and I thought that's what I asked you. Yeah, that they accepted the felony conviction, that it would qualify as one of the identified offenses, but where in Oberle does it say that that will, you know, preclude any challenge based on the absence of a threat to person? Are you saying that Oberle also addressed the issue that we're talking about today? So my point is, in this successive 2255 motion, the burden is incumbent on Cooper to prove that the categorical approach applied in 2003, and he has offered zero authority on that front. He points to two cases. One, Leverton decided 15 years after sentencing, so was in no way part of the legal landscape in 2003 when he was sentenced. And he's offered another case, Romero, a 97 case, that did not involve the enumerated offenses clause. The offense in that case was conveyance of weapon, which of course is not listed in the three strikes law. So you're saying the defendant did not establish, and probably is unknowable on this record, what the district court in fact relied on. I'm saying that it is his burden to prove that the categorical approach applied in 2003. And that's the second step. We can't know, and it's his burden. Those two things mean that he's not going to win. Correct. After Taylor, wouldn't, even in 2003, or in 1990, for that matter, wouldn't the inquiry have simply been whether or not the defendant was convicted of the generic offense of robbery under the enumerated offense clause? And so you would look at whether the penal codes, federal statutes, to determine what the generic offense of robbery was. And if the generic offense of robbery was a threat to person, then the question then would have been whether or not the defendant had been convicted under the enumerated offense clause in 3559 of robbery as defined as the injury to person. Courts, if we were talking about ACCA, yes, that's what courts would have done. But courts didn't. I'm saying, forget 2003 and 1990. Wasn't that always? That's what the word, isn't that what the word convicted means? Haven't we always looked at enumerated offense clauses to determine whether or not the offense was as defined as a generic offense? There is no such thing as a robbery. There's a generic offense of robbery. It wasn't that even in 1990. Not when it came to the three strikes law. We can look at what courts actually did in the three strikes law. That's Makovich. And we can look at how this court interpreted Makovich and applied Makovich in Martinez-Quindezas, for example. And those cases limited Taylor to ACCA. They looked at the unique statutory language in ACCA. The unique legislative history in ACCA. Is there something unique about ACCA? I mean, what is so unique about ACCA? Yeah, so this court talks about it in Makovich in Martinez-Quindezas. And the legislative history had included a definition of burglary at one point and then admitted it. And the language was much more exclusive in ACCA as opposed to the three strikes law. And so that's why in those cases, this court cabined Taylor to ACCA. It was very clear about that in Martinez-Quindezas. But the language in ACCA is very, very similar to what we've got here, isn't it? It wasn't to courts in 2003. And there's been a huge shift in the categorical approach and our understanding of Taylor over the past two decades. So looking back now, we may see similarities that courts in 2003 didn't. This is what courts in 2003 saw. The Supreme Court and Taylor did not impose the categorical approach as a universal requirement of all sentencing enhancements. Taylor was an interpretation of 18 U.S.C. 924E. This court cabined Taylor in 2003 to ACCA. It declined to apply Taylor to the three strikes law. Now... Wait a minute. Are you talking about Martinez-Quindezas? Correct. And you're saying that Martinez-Quindezas referred to 3559's enumerator defense clause? No. Martinez-Quindezas was, of course, a guideline. But my point is, it cabined Taylor to ACCA, as it did, as the court did in Makovich as well, which was a three strikes law. Well, there's a difference between saying it cabined the categorical approach and saying that it didn't necessarily embrace the categorical approach with regard to this particular guideline inquiry. Correct. Those are two completely different things. Those are two different things. And I grant that the holding was we're not applying the categorical approach to this particular guideline. Yeah. Its reasoning, though, as I just read, was that Taylor is limited to ACCA. But even if the government were over-reading these cases, we think these cases show that courts in 2003 did not apply the categorical approach. All Cooper can muster in response is that these cases don't actually prove that. I think he's mistaken. But even if he's correct on that, that does not affirmatively prove his burden that courts in 2003 did, in fact, apply the categorical approach. The government has no burden here. Well, is the government conceding at the threshold that Johnson, the Supreme Court, that Johnson reflects a Supreme Court new rule that has been applied retroactively to the three strikes law? I wouldn't say we're conceding that. I think our argument is that even spotting him that, he still cannot prove that burden. But of course, if this court disagrees— Is that his burden ultimately to show? I mean, the government may, as an economical matter, decide to spot him that. But the bottom line is, in order to prevail, that is part of his burden, is it not? That is correct. He must make that threshold showing that there is a new rule of constitutional law that applies retroactively on appeal. Again, this is a successive 2255 motion, where the burden is tremendously high for him. And the Congress intentionally drew that high burden to create a delicate balance between finality and error correction. Is the ultimate determination, going back to Judge Abell's question, on whether or not the Supreme Court made this right retroactive to cases on collateral review, once there was a prima facie determination by a panel, on the ultimate determination on the merits, is that a jurisdictional—I think you've said already in response to the Chief's question that it's part of the appellant's burden—is that a jurisdictional requirement for us to address the merits? Or is that just part of his—I don't mean to downplay it—but, you know, part of his underlying burden in order to get relief? I believe that the threshold showing of a new rule of constitutional law is a jurisdictional question. Well, the Supreme Court has told us to be very cautious about calling something jurisdictional. There's nothing in that clause that says it is jurisdictional. So I'm going to be cautious about that. Is it critical? Is that issue a critical part of our analysis? Whether it's jurisdictional or not. And again, I'm not speaking on behalf—I'm not prepared to say this is the United States' position. There are cases treating it as jurisdictional. But it is, whether jurisdictional or not, it is a critical question for the Court to address, whether this is a new rule of constitutional law. And let me speak to the it. In terms of what is jurisdictional. I mean, one could argue, and at least I think we have cases that say that the prima facie showing is jurisdictional. In other words, you don't—the district court doesn't have jurisdiction to deal with the second or successive if we haven't said that the court—that prima facie showing has been made. So to that extent, the threshold showing is jurisdictional. But once we've done that, and then it is now within the domain of the district court to act on the motion, I don't know why it would be jurisdictional. I mean, I think it's a threshold burden the court has to make. I mean, that the defendant has to satisfy. But I don't know why it would be jurisdictional then. I think that's a fair interpretation. But it is a critical question. It is the burden on Cooper to prove that new rule, which he has not—which—so our argument is that Cooper has not proven that the categorical approach applied in 2003. He's not offered any authority of any court using the categorical approach for the enumerated offenses clause. That happens a lot. The appellant will say the appellee hasn't identified a case, and the appellee will say the appellant hasn't decided a case. And my hypothesis is in 2003, there was no case. You cited Malkovich on the exception, which unquestionably everybody that looks at the statute would say, of course, to determine whether or not the exception was satisfied. Of course, you have to look at the facts. But on the underlying generic definition of robbery, I don't think there was a—nobody cited a case, one way or the other, saying that we had a fact-based approach or a categorical approach in 2003. So don't you ultimately have to look at the more difficult question? In 2003, was there a reasonable argument that there would be a fact-based approach as opposed to a categorical approach or vice versa? And I mean, you've pointed to Oberle that, OK, well, you cited cases saying that, well, you know, we didn't necessarily apply the categorical approach across the board to the guidelines. But don't you really have to make a textual argument based on the 30-50-dents enumerated offense clause to see whether or not there's a possible reading, even 21 years ago, that you would look at the facts as opposed to the categorical approach? Certainly, the government in Leverton, you know, didn't see a reasonable alternative. Correct. And Leverton has come after decades of development of the categorical approach. Remember, this is Cooper's burden to prove. So to the extent it was an open question, if we disregard Oberle and what courts did then, if we confine Malkovich to this— What's the textual argument? You know, putting aside, you know, all of the case law from 2003 to 2018, what is the textual argument in 2003 that the government would have made to say that we would apply the categorical approach, not to the exception, but to the generic definition of robbery? I think the question really should be what textual argument that Cooper has made and has proven that courts applied the categorical approach in 2003. And he has not done that. To the extent it's an open question of law, Cooper loses. It is his burden to prove by preponderance of the evidence that the court must have relied on the residual clause. So an open question does him no good. We discuss in our brief the Fourth Circuit's Johnson opinion, which, despite applying the categorical approach, talked about the language that the three strikes law uses that in 2003 would give pause before applying the categorical approach. It used very, very inclusive language. It used— In Johnson, they applied the categorical approach. And I recognize that. So with, after the development of the past two decades of the categorical approach, they applied it. But courts in 2003, before that development happened, could look at this language and say, we can still use a fact-specific inquiry. It uses very inclusive language. It uses described in instead of defined in. And so from that, courts in 2003 could look at the facts of the case and, like Oberle did, accept it based on the certified copies of the conviction. If there are no other questions, I ask this Court to affirm. Thank you, counsel. I think the case is submitted unless my colleagues have any further questions. Thank you. Thank you for your fine arguments on both sides.